NOT FOR PUBLICATION

U.S. BANKRUPTCY COURT
DISTRICT OF OREGON
**F I L E D**
June 29, 2006
Clerk, U.S. Bankruptcy Court

**Below is an Order of the Court.**

_____
RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: | ) Bankruptcy Case |
| | ) No. 06-30076-rld13 |
| MICHAEL T. OLIVER and CAROL S. OLIVER, | ) |
| | ) MEMORANDUM OPINION |
| | ) |
| Debtors. | ) |

The issue before me requires that I interpret the disposable income provisions under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 ("BAPCPA"). Specifically, in completing Form B22C, is a debtor entitled to deduct from Current Monthly Income, payments owed on secured debt even though the debtor has declared an intent to surrender the collateral or avoid the lien securing the debt, so that the subject secured debt payments will not be made under the debtor's proposed plan in chapter 13? Resolution of this issue turns on the language of 11 U.S.C. § 707(b)(2)(A)(iii).

This dispute arises in the context of an objection by the chapter 13 trustee ("Trustee") to confirmation of debtors' proposed

Page 1 - MEMORANDUM OPINION

chapter 13 plan, a matter that constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(L), over which I have jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1).

## BACKGROUND

On January 17, 2006, debtors filed a voluntary chapter 13 case. Consistent with 11 U.S.C. § 521 and Fed. R. Bankr. P. 1007(b)(6) [Interim], the debtors completed and filed their "Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income" ("Form B22C"). Based on the debtors' calculations, Part V of Form B22C established the debtors' monthly disposable income under 11 U.S.C. § 1325(b)(2) as $363.87. Multiplying this number by 60 months, the § 1325(b)(4) "applicable commitment period" as set forth in Part II, paragraph 17 of Form B22C, results in an aggregate disposable income over the life of the plan in the amount of $21,832.20. The Trustee objected ("Trustee's Objection") to confirmation of the debtors' plan on the basis that the plan was not feasible where it would "require approximately 68 months to completely pay the general unsecured creditors and attorney fees the required amount of $21,840.00." Supplemental Trustee's Objection to Confirmation; and Motion(s) Thereon. Thereafter, on March 13, 2006, debtors filed their "Amended Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income" ("Amended Form B22C"). The net result of Amended Form B22C was to reduce debtors' monthly disposable income from $363.87 to -$34.40, thereby eliminating any required distribution to unsecured creditors over the applicable commitment period.

The underlying calculations in Amended Form B22C differ from

Page 2 - MEMORANDUM OPINION

Form B22C as follows:

In paragraph 38 of Amended Form B22C, "Total Expenses Allowed under IRS Standards" were reduced by $44.40 (from $4,248.15 to $4,203.75) to reflect that debtors had added as a transportation expense the average monthly payment for debts secured by their second vehicle.

In paragraph 51 of Amended Form B22C, "Total Deductions for Debt Payment" were increased by $442.67 (from $508.98 to $951.65) to reflect that debtors had added secured payment obligations with respect to the following six creditors:

| Creditor | Property Securing the Debt | 60-Month Average Paym't |
| --- | --- | --- |
| American General Finance | Non-PMSI Household Goods | $166.83 |
| Continental Loan | Two Non-PMSI Household Goods | 36.00 |
| Household Finance | Non-PMSI Household Goods | 98.93 |
| Midtown Credit | Two Non-PMSI Household Goods | 36.00 |
| Reliable Credit | 1989 Chev S-10 - not running | 44.40 |
| Sun Credit | Two Non-PMSI Household Goods | 30.00 |

See Paragraph 47, Amended Form B22C.

These additional payments total $412.16 of the increase in paragraph 51; the remaining $30.51 increase to paragraph 51 is reflected by an increase in paragraph 49 "Payments on priority claims" from $219.13 in Form B22C to $249.64 in Amended Form B22C.

Debtors do not intend to make any payments on the above secured payment obligations during the life of their plan. With respect to the Reliable Credit obligation, paragraph 2(b)(5) of debtors' proposed plan provides for the surrender of the motor vehicle collateral. With respect to the obligations to American General Finance, Continental Loan, Household Finance, Midtown Credit, and Sun Credit, paragraph 6(b) of debtors' proposed plan seeks to avoid each of their non-purchase money

Page 3 - MEMORANDUM OPINION

security interests in household goods on the basis that they impair debtors' exemptions. The Trustee asserts that debtors should not be able to include in paragraph 47 of Amended Form B22C obligations which they in fact will not be paying. If those secured payment obligations are removed from the "Total Deductions for Debt Payment," debtors' monthly disposable income is $377.76, which over the applicable 60-month commitment period, would result in a minimum dividend to the unsecured creditors of $22,665.60.

## DISCUSSION

As relevant to this matter, section 1325(b) provides:

> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor...less amounts reasonably necessary to be expended –
>
> > (A)(I) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed;
> > ...
>
> (3) Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than–
> > ...
> > (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals....
> ...

Because debtors have a current monthly income greater than the median family income for the applicable state and family size, the calculation of their disposable income is to be made in accordance with 11 U.S.C. § 1325(b)(3). See Fed. R. Bankr. P. 1007(b)(6) [Interim]. Section 1325(b)(3) incorporates the formula in § 1325(b)(2) for

Page 4 - MEMORANDUM OPINION

determining disposable income, and that formula relies on the provisions of § 707(b)(2)(A) as the guide for determining which reasonably necessary expenses may be deducted from debtor's current monthly income for purposes of arriving at debtor's disposable income.

As relevant to the issue before me, section 707(b)(2)(A)(iii) provides:

> The debtor's average monthly payments on account of secured debts shall be calculated as the sum of --
> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition....

The court in <u>Matter of Walker</u>, 2006 WL 1314125 (Bankr. N.D. Ga. May 1, 2006), in a thorough analysis of section 707(b)(2)(A)(iii), and specifically the plain meaning of the phrase "scheduled as contractually due," concluded that in completing Form B22C, debtors are entitled to deduct from current monthly income the average payments on debts secured by collateral with respect to which they have expressed an intent to surrender. I agree with the <u>Walker</u> court's analysis, and find that it extends to average payments on debts secured by collateral as to which debtors have moved to avoid the applicable liens postpetition.

The Trustee asserts that because the statutory scheme of BAPCPA is "replete with references that deductions to the 'disposable income' requirement are to be made by <u>actual future payments</u> necessary to the maintenance or support of the debtors or their dependents," as a matter of statutory construction, I should refer to this general statutory scheme to clarify an alleged ambiguity regarding the deductibility of secured debt payments debtors do not propose to make in their proposed plan. "This argument ignores a basic principle of statutory

Page 5 - MEMORANDUM OPINION

construction, namely that the specific prevails over the general." <u>Bonneville Power Administration v. Federal Energy Regulatory Commission</u>, 422 F.3d 908, 916 (9th Cir. 2005).

Section 707(a)(2)(A)(iii) addresses secured debt payments, specifically, rather than expenses generally. In interpreting that provision, I am guided by its specific language and cannot incorporate concepts or language from section 707(b)(2)(A) or elsewhere where Congress itself did not incorporate those concepts or language. If Congress intended to limit secured debt payments contractually due from debtors on the petition date to those where actual future payments will be made in Form B22C calculations, it knew how to do so, as reflected, for example, by the inclusion of the terms "actual monthly expenses" and "actual expenses" elsewhere within section 707(b)(2)(A)(ii)(I) and (II).

My decision in this matter is limited to the issue of whether the debtors can include in paragraph 47 of Form B22C average payments on secured debts even where those payments, in fact, will not be made under the chapter 13 plan as proposed. However, debtors themselves concede "Form B22C is only a first step to calculate the amount to be paid under debtor's [sic] proposed plan." A further confirmation hearing will be held July 6, 2006, at 1:30 p.m., to address additional issues with respect to confirmation of debtors' proposed plan.

# # #

cc: Alan R. Unkeles
    Brian D. Lynch, Trustee